UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Criminal No. 06-10127-JLT |
| | * |
| LUIS ANIVAL DIAZ CHAVEZ, a/k/a | * |
| LUIS ANGEL DIAZ ROSARIO, a/k/a | * |
| LUIS ADIAZ ROSARIO | * |
| | * |
| Defendant. | * |

MEMORANDUM
April 3, 2008

TAURO, J.

Defendant Luis Anival Diaz Chavez moves to suppress statements and evidence he proffered to Diplomatic Security Service Agents during a February 17, 2006 interview. Defendant claims that the agents searched his wallet and took certain documents; and that he made certain statements to the agents while in custody, but without having properly waived his Miranda rights.[1]  For reasons set forth below, Defendant's Motion to Suppress [#19] is DENIED.

I. FACTUAL BACKGROUND

On February 17, 2006, Special Agents George Fennell and Joseph Love met with Defendant on the second floor of the Tip O'Neill Federal Building ("Federal Building").  In a letter dated February 6, 2006, Agent Fennell informed Defendant that his application for a passport had been approved, and that he should come to the Boston Passport Agency, located in

---

[1] See Memorandum of Law in Support of Motion to Suppress Statements and Evidence [#20].

the Federal Building, to pick it up.[2]  On February 17, 2006, Defendant appeared at the Federal Building, where he was directed to wait.[3]  Some time later, Special Agents Fennell and Love appeared, introducing themselves as "Special Agents" and displayed their credentials.[4]  They asked Defendant if he would accompany them upstairs to their office.[5]  Defendant complied, and went with the agents up to a conference room on the tenth floor.[6]  Attached to the conference room was a holding cell.[7]

The agents questioned Defendant for somewhere between ninety and one hundred five minutes.[8]  Agent Fennell did most of the talking, while Agent Love took a more ancillary role.[9]  Agent Love testified that there was no "good cop, bad cop" routine to discomfit the Defendant.[10]

---

[2] February 6, 2006 Letter to Luis Diaz-Rosario, Gov. Ex. B.  Agent Fennell testified that the letter was, in fact, a "ruse" to draw Defendant to the Federal Building.  George Fennell Test., March 12, 2008.  As the Supreme Court has noted, "Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion . . . are not within Miranda's concerns."  Ill. v. Perkins, 496 U.S. 292, 297 (1990).

[3] Luis Anival Diaz Chavez Test., March 17, 2008.

[4] Joseph Love Test., March 17, 2008.

[5] Id.

[6] Fennell Test., March 12, 2008.

[7] Luis Anival Diaz Chavez Aff. ¶ 4.

[8] Agent Love testified that the interview lasted approximately one hour and a half.  Joseph Love Test., March 17, 2008.  Agent Fennell testified that the interview lasted approximately one hour and forty-five minutes.  George Fennell Test., March 12, 2008.

[9] Love Test., March 17, 2008.

[10] Id.

2

Defendant described the atmosphere of the interview as aggressive,[11] while Agent Love described the tone as "clear," but "not aggressive."[12] During the interview, Agent Fennell asked Defendant to empty his pockets. Defendant complied, and produced his wallet. Agent Fennell took Defendant's driver's license and Social Security card, returning the former and holding on to the latter.[13]

II. LEGAL STANDARD

As the First Circuit has explained, "The custodial interrogation inquiry necessarily demands determination of its two subsidiary components: 1) custody and 2) interrogation."[14] First, for the purposes of custody, "the ultimate inquiry is whether there was 'a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'"[15] To determine whether there was a restraint on freedom of movement, a court must examine all circumstances surrounding the interrogation.[16] The test is an objective one; the subjective beliefs of either the interrogator or the interrogee are immaterial.[17] Relevant circumstances include, *inter alia*:

1. whether the suspect was questioned in familiar or at least neutral surroundings;

2. the number of law enforcement officers present at the scene;

---

[11] Chavez Test., March 17, 2008.

[12] Love Test., March 17, 2008.

[13] Fennell Test., March 12, 2008.

[14] See U.S. v. Amado Fernandez Ventura, 85 F.3d 708, 710 (1st Cir. 1996).

[15] Id., quoting Thompson v. Keohane, 516 U.S. 99, 112 (1995).

[16] Ventura, 85 F.3d at 711.

[17] Id.

3. the degree of physical restraint placed upon the suspect; and

4. the duration and character of the interrogation.[18]

Second, for the purposes of interrogation, a court may consider both express questioning and its functional equivalents. But because this court finds that the Defendant was not in custody, it need not evaluate the nature of the interrogation.

III. DISCUSSION

1. Surroundings of the Interrogation

Law enforcement officials have interrogated persons in various contexts from the familiar to the neutral to the non-neutral. On one end, courts have found that questioning a defendant in his own home would constitute a familiar setting for the purposes of the custodial inquiry.[19] Moving along the continuum, a neutral setting might be a public street.[20] On the other end, the First Circuit has determined that the interrogation room of a jailhouse is a place where police officers are "in a position to dominate," and therefore not neutral.[21]

This court finds that a conference room in a federal building is a neutral setting. Since all kinds of people come through the doors of a federal building, it is not like a jailhouse, where

---

[18] Id.

[19] See U.S. v. Mittel-Carey, 493 F.3d 36, 50 (1st Cir. 2007) ("an interrogation in a defendant's residence, without more, certainly weighs against a finding of custody"); U.S. v. Prosperi, 2007 U.S. Dist. LEXIS 81482, at *8 (D. Mass. Nov. 2, 2007) (Stearns, J.) (defendant "was questioned in the familiar setting of his own home").

[20] See U.S. v. Drayton, 536 U.S. 194, 200-01 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen."); U.S. v. Trueber, 238 F.3d 79, 94 (1st Cir. 2001).

[21] U.S. v. Jones, 187 F.3d 210, 218 (1st Cir. 1999).

officers are likely to dominate an interogee. It is true that Defendant saw a holding cell attached to the conference room. But there is no indication that Defendant was detained in the holding cell, nor that he came to the Federal Building against his will, as one might when being interrogated in a police station.

2. Number of Law Enforcement Officers

Neither party disputes that only two agents were present for the interrogation, and that they did not engage in "good cop-bad cop" routine.[22] In light of prior case law,[23] these facts, though not dispositive, suggest that Defendant was not in custody.

3. Degree of Physical Restraint

The Parties dispute the degree of physical restraint to which Defendant was subjected. Agent Fennell testified that there was no physical contact between the agents and Defendant.[24] Fennell further testified that he may have inadvertently bumped into Defendant as they walked to the elevator, but he did not grab hold of Defendant at any time.[25] Agent Love testified that he did not touch Defendant, and further that Defendant was not restrained during the interview.[26]

Defendant, on the other hand, gave different versions of the physical restraint to which he

---

[22] See U.S. v. Lanni, 951 F.2d 440, 442 (1st Cir. 1991) (affirming district court's finding that defendant was not in custody when "only two agents were present and only one did the questioning; there were no 'tricks' such as a 'good guy-bad guy' routine or the use of false information; defendant was freely allowed to go to the bathroom").

[23] See id.; Mittel-Carey, 493 F.3d at 30 (the presence of eight police officers in a suspect's home lent credence to the district court's determination that a suspect was in custody).

[24] Fennell Test., March 12, 2008.

[25] Id.

[26] Joseph Love Test., March 17, 2008.

was subjected. In his sworn affidavit, Defendant stated that the agents "stood on either side of me, took hold of my arms and physically escorted me to an interview room. I did not believe that I had any choice but to go with them, since they were physically escorting me."[27] But on direct examination, Defendant testified that only Agent Love held him by the arm, while Agent Fennell walked in front of them.[28]

Such a discrepancy calls into question the credibility of Defendant's testimony. Both agents testified that there was *no* physical contact between the agents and the Defendant, apart from the possibility of inadvertent "bumping." Defendant, for his part, altered his testimony as to the degree of physical contact. Though the agents' testimony conflicts with the Defendant's, this court finds the agents' testimony more compelling. Consequently, this court finds that no physical touching transpired between the Defendant and the two agents. This factor also weighs in favor of the conclusion that Defendant was not in custody.

4. Duration and Character of the Interrogation

The final factor has both an objective element, the duration of the questioning, and a somewhat more atmospheric consideration, its character. As regards the duration, the evidence suggests that the episode lasted between ninety minutes and one hundred five minutes. The case law, however, has not conclusively set the limits on how long an interrogation might last before it becomes custodial. For instance, an interrogation lasting between ninety and one hundred twenty minutes was held to be custodial in nature.[29] Crucial to that determination, however, was

---

[27] Chavez Aff. ¶ 4.

[28] Chavez Test., March 17, 2008.

[29] See Mittel-Carey, 493 F.3d at 40.

evidence that the interrogating agent had made coercive statements, and that the defendant was subject to physical control in his own home.[30] By contrast, the First Circuit found that a three hour interrogation—with "no evidence that the questions were coercive . . . or that the agents were overbearing"—was not custodial in nature.[31]

As noted above, the parties disagree as to the character of the interrogation. Agent Love described the tone of the inquiries as clear, but not aggressive. But Defendant described it as aggressive.[32] There is no way for this court to make a meaningful conclusion either way.

There is also disagreement as to whether Defendant asked to leave during the interview. The agents testified that Defendant did not ask to leave.[33] But Defendant testified that he asked to leave, in Spanish, at two different points in the interrogation.[34] What gives this court pause, however, is the fact that Defendant did not mention this pair of requests in his previous submissions to the court.[35] At three places in the Memorandum attached to the Motion to Suppress, Defendant states that he reasonably concluded "he was not free to leave" the

---

[30] Id. The court was particularly concerned about "the level of physical control that the agents exercised over the defendant." At 6:25 AM, in his own home, the defendant was "ordered to dress, go downstairs, and was told where to sit; he was physically separated from his girlfriend and not allowed to speak to her along; and he was escorted by agents on the three occasions that he was permitted to move, including while he used the bathroom." Id. This situation is notably dissimilar from the one at bar.

[31] See U.S. v. Beverly, 1993 U.S. App. LEXIS 11047, at *9-10 (1st Cir. May 11, 1993).

[32] Chavez Test., March 17, 2008.

[33] Fennell Test., March 12, 2008.

[34] Chavez Test., March 17, 2008.

[35] Neither his Affidavit nor his Memorandum of Law mentions this request. See Chavez Aff.; Memorandum of Law in Support of Motion to Suppress Statements and Evidence.

interrogation based on his subjective perception of the situation.[36] If, as Defendant testified before this court, he asked to leave on two separate occasions, why did he not include those requests in his written submissions? That information would have lent stronger support to the "reasonable conclusion" that he could not leave than his subjective impressions that he could not.

The duration and character of the interrogation do not weigh in favor of a finding of custody. The length of time was not excessive, the manner of questioning was not overbearing, and Defendant adduces no objective evidence that he was not free to leave, whatever his own subjective beliefs may have been.

IV. CONCLUSION

For all of the above reasons, this court finds that Defendant was not in custody for the purposes of Miranda. Consequently, his Motion to Suppress is DENIED. An Order has issued.

          /s/ Joseph L. Tauro
          United States District Judge

---

[36] Id. at 9-11. This court iterates that the subjective beliefs of an interogee are "not germane" to the determination of custody. Ventura, 85 F.3d at 711.